Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (I)

| | | |
|---|---|---|
| ITZEL GARCÍA CATALÁN<br><br>Apelante<br><br>V.<br><br>PEDRO ANTONIO ROSA RIVERA<br><br>Apelado | KLAN202400049 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022RF01357 (705)<br><br>Sobre: Alimentos-Menores de Edad y otros |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de julio de 2024.

Comparece ante este tribunal apelativo, la Sra. Itzel García Catalán (la señora García Catalán o la apelante) mediante el recurso de *Apelación Civil* de epígrafe y nos solicita que modifiquemos la *Resolución*[1] emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 2 de noviembre de 2023, notificada el día siguiente. Mediante este dictamen, el foro primario fijó, entre otros asuntos, una pensión final a beneficio de los menores PFRG, PFRG y PFRG, más estableció la proporción que aportarían los progenitores para los demás gastos. Asimismo, decretó la cuantía de la pensión alimentaria retroactiva que deberá satisfacer el padre alimentante, más concedió honorarios de abogado a favor de la apelante.

---

[1] Advertimos que los dictámenes de alimentos y de custodia que modifican o intentan modificar los dictámenes previos, por haber ocurrido un cambio en las circunstancias, constituyen propiamente sentencias. *Figueroa v. Del Rosario*, 147 DPR 121 (1998).

Número Identificador
SEN2024_____

Por los fundamentos que expondremos a continuación, se modifica la *Resolución* apelada y así modificada, se confirma.

## I.

El 20 de octubre de 2022, la señora García Catalán instó una demanda sobre divorcio, custodia y alimentos en contra del Sr. Pedro A. Rosa Rivera (señor Rosa Rivera o apelado). En consecuencia, el 6 de diciembre posterior, el TPI dictó la Sentencia declarando con lugar a la demanda, y decretó roto y disuelto el vínculo matrimonial. A su vez, determinó que la custodia se le otorgaría a la señora García Catalán y esbozó que existe una pensión alimentaria provisional establecida mediante la Resolución del 17 de noviembre de 2022. El 12 de diciembre de 2022, el foro apelado emitió una Sentencia Enmendada para incluir todos los acuerdos de las partes relativos a las relaciones filiales, y hacer constar que el apelado desistió de su reconvención.

Así las cosas, y luego de múltiples trámites procesales innecesarios detallar, el 31 de octubre de 2023, la Lcda. María de los Ángeles Colom Báez, Examinadora de Pensiones Alimentarias (EPA), presentó ante el foro *a quo* el *Informe de Pensión Alimentaria Final* con sus respectivas recomendaciones.[2] En lo aquí pertinente, surge del informe que las partes estipularon:[3]

> 1- La proporción entre las partes, según el ingreso neto combinado que estipularon es 64.16 por ciento el padre y 35.84 la madre.
> 2- Los menores asisten a campamentos de Navidad y de verano.
> 3- El gasto extracurricular de volleyball en "Innovative", la mensualidad es de $255 por los tres menores ($85 por cada uno).
> 4- La cuota de las facilidades en "Innovative" es de un pago anual de $300.
> 5- Se pagan $75 cada semestre para un menor y $37.50 semestral para cada segundo y tercer menor para un total de $150 a pagarse en octubre y febrero de cada año.
> 6- Pago total de $45 anual por los tres menores en la Federación de Volleyball de Puerto Rico ($15 por niño por año), o sea, un pago de $3.75 mensuales.

---

[2] Véase, Apéndice del Recurso, a la pág. 538.
[3] *Íd.*, a las págs. 539 y 540.

Asimismo, la EPA en su informe determinó, en lo que nos concierne, como hechos probados que:[4]

> 1- Los menores asisten a campamentos de Navidad y de verano y **el gasto será atendido en la proporción estipulada**.
> 2- Evaluada la Planilla de Información Personal y Económica presentada en el gasto de entretenimiento se reclamaron $150 mensuales por dicho concepto para la familia. *Para los menores estaría incluido en la Pensión Alimentaria Básica siendo considerado el gasto de deportes para los menores.*
> 3- El gasto extracurricular de volleyball en "Innovative", la mensualidad es de $255 por los tres menores ($85 por cada uno).
> 4- La cuota de las facilidades en "Innovative" es de un pago anual de $300.
> 5- Se pagan $75 cada semestre para un menor y $37.50 semestral para cada segundo y tercer menor para un total de $150 a pagarse en octubre y febrero de cada año.
> 6- Pago total de $45 anual por los tres menores en la Federación de Volleyball de Puerto Rico ($15 por niño por año), o sea, un pago de $3.75 mensuales.

A su vez, y luego de escuchar el testimonio de las partes y otorgarle credibilidad a lo declarado, y examinar la totalidad de la evidencia, la EPA, en lo que nos corresponde, recomendó lo siguiente:[5]

> • Las partes estipularon que los gastos a proporcionarse fueran en la siguiente proporción 64.16% el padre y 35.84% la madre.
> • Estipulando las partes que existe un gasto de campamento de verano y de Navidad, cuando sea necesario, se atenderá **en la proporción estipulada** de 64.16% el padre y 35.84% la madre.
> • La madre provee el plan médico. Cada padre atenderá en proporción [de] 64.16% el padre [y] 35.84% la madre todo gasto no cubierto por el plan **que sea mayor de $50.00** (está determinado atender este gasto desde la Pensión Alimentaria Provisional, estipulándose cambio en la proporción).

El 2 de noviembre de 2023, notificada al día siguiente, el foro primario dictó la *Resolución* apelada en la que aprobó y acogió como suyas las determinaciones de hechos y conclusiones de derecho incluidas en el Informe presentado por la EPA. En su consecuencia, decretó lo previamente transcrito según recomendado por esta.

---

[4] *Íd.*, a las págs. 541-544.
[5] Señalamos que detallamos las recomendaciones atinentes a las controversias. Véase, Apéndice del Recurso, a la pág. 539.

Inconforme, la señora García Catalán presentó una *Moción de Reconsideración de Resolución de Pensión Alimentaria Final y Solicitud de Enmiendas o Determinaciones Iniciales o Adicionales de Hechos y Derecho*. En esta, cuestionó quién se supone que costee los primeros $50 de deducible de todo gasto médico no cubierto por el plan. Por lo que, solicitó que se estableciera que todo deducible o gasto de salud debe ser sufragado por ambos padres conforme a la proporción establecida, esto, sin hacer mención de la frase "mayor de $50.00".

De igual manera apuntaló que, durante la vista, las partes estipularon ciertos gastos de campamentos en los que ella incurrió y el apelado no ha pagado. Al respecto indicó que en la vista de pensión se estipuló que, en diciembre de 2022, hubo un gasto de campamento de Navidad de $350 por dos de los tres menores (las gemelas). A su vez mencionó que el gasto de campamento de verano de 2023, que fue aceptado por el señor Rosa Rivera, consistió en $892 por las dos menores de 7 años y $501.75 por el menor de 12 años para un total de $1,395.75. No obstante, expresó que la EPA, sin fundamento en derecho alguno, omitió incluir dicha estipulación en el Informe. Por ende, arguyó que dicho gasto fue incurrido, se estipuló y amerita que aparezca por escrito en el dictamen apelado.

El TPI refirió el pedido a la EPA, quien el 14 de diciembre de 2023 presentó *Informe sobre Reconsideración* en el que determinó que no procedía recomendar, enmendar o añadir determinaciones de hechos.[6] Respecto al gasto médico explicó que, desde la determinación del Informe de Pensión Alimentaria Provisional, fue estipulado, que las partes acordaron que el gasto médico no cubierto por el plan mayor de $50 se atendería a un 50 por ciento. Sobre el gasto de campamento de verano, estableció que el mismo se

---

[6] Véase, Apéndice del Recurso, a la pág. 600.

atendería en proporción de 64.14% el padre y 35.84% la madre, según dispuesto en el Informe de Pensión Alimentaria Final fechado el 6 de octubre de 2023.

Mediante la *Resolución* del 14 de diciembre de 2023, notificada el mismo día, el foro apelado declaró *No Ha Lugar* el antedicho petitorio.

Todavía en desacuerdo, la apelante acude ante esta *Curia* imputándole al TPI haber incurrido en los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, HON. JOSÉ ALICEA RIVERA, AL ACOGER EL INFORME DE LA EPA EN SU TOTALIDAD Y EN CONSECUENCIA DETERMINAR, SIN BASE NI FUNDAMENTO DE HECHO NI DERECHO, QUE EL ALIMENTANTE SOLO DEBERÍA REEMBOLSAR A MAMÁ/APELANTE LOS GASTOS DE LOS MENORES RELACIONADOS A LA SALUD QUE EXCEDIERAN DE $50.00 A PESAR DE QUE EN LA VISTA EVIDENCIARIA CELEBRADA EL 6 DE OCTUBRE DE 2023, A PREGUNTAS DE LA EPA ESPECÍFICAMENTE, MAMÁ EXPRESÓ CLARA E INEQUÍVOCAMENTE QUE ESTA NO ESTABA DE ACUERDO EN QUE EN LA PENSIÓN ALIMENTARIA FINAL SE INCLUYERA LA MISMA DETERMINACIÓN DE LA PENSIÓN ALIMENTARIA PROVISIONAL EN CUANTO A QUE EL ALIMENTANTE/APELADO SOLO DEBIA REEMBOLSAR LOS GASTOS DE SALUD QUE EXCEDIERAN DE $50.00 SINO TODO LO CONTRARIO; MAMÁ/APELANTE, POR VOZ DE SU REPRESENTANTE LEGAL INCLUSIVE, EXPRESÓ VERBALMENTE PARA RÉCORD, Y ASÍ DEBIERA SURGIR DE LA GRABACIÓN DE LA VISTA, QUE LOS GASTOS DE SALUD, ASÍ COMO CUALQUIER OTRO GASTO DE LOS MENORES, DEBÍA SER SUFRAGADO COMO CUALQUIER OTRO GASTO SUPLEMENTARIO DEL TOTAL DEL GASTO CONFORME AL [POR CIENTO] ESTABLECIDO A CADA PROGENITOR Y QUE NO EXISTÍA NORMA DE DERECHO NI ESTIPULACIÓN ALGUNA PARA QUE FUERA DE OTRA FORMA.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, HON. JOSÉ ALICEA RIVERA, AL ACOGER EL INFORME DE LA EPA EN SU TOTALIDAD Y EN CONSECUENCIA, EN LA APRECIACIÓN ERRÓNEA DE LA PRUEBA VERTIDA Y <u>ESTIPULADA</u> DURANTE LA VISTA, Y LIMITAR EL PAGO DE GASTOS SUPLEMENTARIOS DE VOLLEYBALL A $283.75 POR AQUELLOS GASTOS RECURRENTES Y OMITIR TODOS LOS DEMÁS GASTOS RELACIONADOS [CON] DICHA ACTIVIDAD EXTRACURRICULAR.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, HON. JOSÉ ALICEA RIVERA, AL ACOGER EL INFORME DE LA EPA EN SU TOTALIDAD Y EN CONSECUENCIA, EN LA APRECIACIÓN ERRÓNEA DE LA PRUEBA VERTIDA Y ESTIPULADA DURANTE LA VISTA, Y OBVIAR QUE

LAS PARTES ESTIPULARON QUE LOS GASTO[S] DE CAMPAMENTO DE VERANO Y NAVIDAD PASADOS E INCURRIDOS POR MAMÁ/APELANTE CONSISTIERON EN $350 PARA NAVIDAD Y UN TOTAL DE $1,395.75 EN VERANO PARA LOS TRES MENORES.

El 17 de mayo de 2024 dimos por recibida la Exposición Narrativa y el Alegato Suplementario presentadas por la parte apelante el 16 del mismo mes y año. Luego de concedida una prórroga, el 8 de julio de 2024 la parte apelada presentó su *Alegato en Oposición* por lo cual nos damos por cumplidos y decretamos perfeccionado el recurso.

Analizados los escritos de las partes, el expediente apelativo y la exposición narrativa; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Alimentos**

En nuestra jurisdicción, los casos de derecho a alimentos de menores "están revestidos del más alto interés público, siendo el interés principal el bienestar del menor". *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012); *Toro Sotomayor v. Colón Cruz*, 176 DPR 528 (2009); *Argüello v. Argüello*, 155 DPR 62, 70 (2001). "Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". Artículo 653 del Código Civil, 31 LPRA sec. 7531.[7] Cuando el alimentista es menor de edad, también comprenden "su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales". *Íd.*

---

[7] El "Código Civil de Puerto Rico", Edición de 1930, fue derogado y sustituido por la Ley núm. 55-2020, según enmendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 5311 *et seq*. No obstante, los hechos que originan la presente controversia tomaron lugar luego de la derogación del código anterior, por lo cual el nuevo código es la ley que aplica al caso.

La obligación de alimentar al menor es inherente a la maternidad y la paternidad por lo que recae sobre los obligados desde el momento en que la relación filial queda establecida legalmente, independientemente de las fuentes de las cuales emana la obligación de alimentar. *Díaz Rodríguez v. García Neris*, supra, a la pág. 12; *Santiago, Maisonet v. Maisonet Correa*, supra, a las págs. 560-561. Esta obligación es personal de cada uno de los padres por lo que debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor. *Díaz Rodríguez v. García Neris*, supra, a la pág. 12; *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019); *Figueroa Robledo v. Rivera Rosa*, 149 DPR 565 (1999).

En aras de lograr que los obligados contribuyan a la manutención de los menores dependientes, se aprobó la Ley núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como *"Ley Orgánica de la Administración para el Sustento de Menores"*, 8 LPRA sec. 502 *et seq.*, y se adoptaron las *Guías Mandatarias para Computar las Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 8529 del 30 de octubre de 2014, según enmendado, para fomentar la uniformidad del principio de proporcionalidad.[8] *Díaz Rodríguez v. García Neris*, supra; *Santiago, Maisonet v. Maisonet Correa*, supra, a las págs. 562-563.

Cónsono con lo antedicho, el Artículo 666 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7562, expresamente dispone que: "La cuantía adecuada de los alimentos para el menor de edad se fija siguiendo los criterios dispuestos en la ley especial complementaria". Asimismo, el Artículo 671 del mismo cuerpo legal, 31 LPRA sec. 7567, establece que: "La cuantía de los alimentos se

---

[8] Destacamos que el 16 de marzo de 2024 entró en vigor las nuevas *Guías mandatarias para fijar y modificar pensiones alimentarias en Puerto Rico,* Reglamento Núm. 9535 del 15 de febrero de 2024.

reduce o aumenta proporcionalmente según aumenten o disminuyan las necesidades del alimentista y los recursos del obligado". Por eso, la pensión se reducirá o aumentará en proporción a los recursos del primero y a las necesidades del segundo. De acuerdo con este principio de proporcionalidad, se tomarán en consideración los recursos del alimentante y la posición social de la familia, así como el "estilo de vida que lleva el alimentante". *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623 (2011); *Guadalupe Viera v. Morell*, 115 DPR 4, 14 (1983).

Este propósito se logra mediante el nombramiento de examinadores, quienes, en el ejercicio de su cargo, tendrán autoridad para recibir y evaluar la evidencia y rendir un informe al tribunal que contenga las determinaciones de hechos, conclusiones de derecho y sus recomendaciones referentes a fijar, modificar y hacer efectivas las órdenes de pensión alimenticia. Ley Orgánica de la Administración para el Sustento de Menores, Ley núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 512 (2) (d). El informe del examinador incluirá sus determinaciones de hechos, conclusiones de derecho y recomendaciones sobre la pensión alimenticia, y será referido al Tribunal de Primera Instancia. El juez podrá hacer suyas las determinaciones, conclusiones y recomendaciones del examinador o hacer sus propias determinaciones de hechos o conclusiones de derecho con o sin vista previa y emitir la orden, resolución o sentencia que corresponda. Ley Orgánica de la Administración para el Sustento de Menores, *supra*, 8 LPRA sec. 517 (5). Así, la determinación final sobre la cuantía de los alimentos corresponderá al prudente arbitrio del juzgador, teniendo en cuenta que haya proporción entre la necesidad del alimentista y la posibilidad económica del alimentante. *Guadalupe Viera v. Morell*, supra, a la pág. 14.

**Apreciación de la prueba**

Es principio reiterado que la apreciación de la prueba realizada por los tribunales de primera instancia debe ser objeto de deferencia por los tribunales apelativos. *McConnell v. Palau*, 161 DPR 734, 750 (2004). La parte interesada en que descartemos tal apreciación de la prueba tiene la obligación de demostrar que medió pasión, prejuicio, parcialidad o error manifiesto de parte del juzgador apelado. Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2; *Lugo Ortiz v. Mun. de Guayama*, 163 DPR 208, 221 (2004); *McConnell v. Palau*, supra, a la pág. 750.

Como regla general, el Tribunal de Apelaciones no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que realizó el foro primario ni debe sustituirlas por las suyas. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Ello es así porque es el Tribunal de Primera Instancia el que tiene la oportunidad de evaluar el comportamiento de los testigos y sus reacciones durante el juicio. *López v. Dr. Cañizares*, 163 DPR 119, 136 (2004). Pero esta norma no es absoluta, ya que el apelante puede presentar prueba que demuestre que la apreciación hecha por el foro sentenciador no fue correcta o no está refrendada por la prueba presentada y admitida. *Serrano Muñoz v. Auxilio Mutuo*, supra, a la pág. 741.

Así pues, en ausencia de error, prejuicio y parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, apreciación de la prueba, ni credibilidad adjudicada por el tribunal de instancia. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009). Ahora bien, en cuanto a la prueba testifical, procede la intervención de un tribunal apelativo en la apreciación y la adjudicación de credibilidad de los testigos en los casos en que el análisis integral de la prueba cause insatisfacción o intranquilidad de conciencia tal que conmueva el sentido básico de justicia. *Pueblo*

*v. Cabán Torres,* 117 DPR 645, 648 (1986). Por tanto, solo podrán dejarse sin efecto las determinaciones de hechos basadas en testimonio oral cuando las mismas sean claramente erróneas. Regla 42.2 de Procedimiento Civil, *supra.* Quien impugne una sentencia o resolución deberá presentar evidencia sustancial que derrote la presunción de corrección que cobija la decisión del Tribunal de Primera Instancia. Esto es, evidencia que en una mente razonable pueda aceptarse como adecuada para sostener una conclusión. *Vázquez Cintrón v. Banco Desarrollo,* 171 DPR 1, 25 (2007).

**III.**

En esencia, la apelante señaló que el TPI erró en la apreciación de la prueba. En lo que atañe al primer error, esbozó que en la vista ante la EPA solicitó que todo gasto de salud no cubierto por el plan médico o deducible <u>sea costeado por ambos progenitores conforme al por ciento establecido</u>. No obstante, arguyó que el foro primario acogió la propuesta del apelado en la que se determinó que se atenderá todo gasto de salud no cubierto por el plan en la proporción de 64.16% el padre y 35.84% la madre <u>que sea mayor a $50</u>.

Asimismo, planteó en el segundo error, que el foro *a quo* actuó incorrectamente al limitar el pago de gastos suplementarios de volleyball a $283.75 y omitir todos los demás relacionados con dicha actividad. De igual manera, en el tercer error expresó que se ignoró que las partes estipularon que los gastos de campamentos de verano y Navidad incurridos por la señora García Catalán fueron $1,395.75 y $350, respectivamente. Por lo que, a su entender, en estos dos últimos señalamientos, el TPI actuó contrario a la prueba vertida y estipulada en la vista. Por estar los errores relacionados entre sí, los discutiremos conjuntamente.

Luego de escuchadas las vistas del 17 de mayo y 6 de octubre de 2023, en las partes relacionadas a los errores señalados, resolvemos que de estas surgen claramente que las partes

estipularon que los menores asisten a campamentos de verano y Navidad. En cuanto a las cuantías señaladas por la apelante surge que estas sí fueron expresadas para récord e incluso la Examinadora realizó el cómputo basado en la proporción estipulada por las partes. Así las cosas, surge del récord que el campamento del pasado verano tuvo un costo de $350 de los cuales el apelado adeuda $224.56.[9] Acto seguido, la representación legal de la apelante señaló que el pasado campamento de Navidad tuvo un costo de $892 por las dos gemelas y $501.75 en cuanto al otro menor. A esos efectos, la Examinadora indica que el total es de $1,393.75 de los cuales el apelado adeuda, de acuerdo a la proporción, $894.23.[10] Respecto a dichas cantidades indicadas no surge que las partes las hayan estipulado. Sin embargo, no hubo objeción por parte del apelado. Por lo tanto, forzoso es concluir que dichas partidas fueron computadas y aceptadas como correctas. Así las cosas, la recomendación de la Examinadora en cuanto a que "[e]stipulando las partes que existe un gasto de campamento de Verano y de Navidad, cuando sea necesario, se atenderá en la proporción estipulada de 64.16% el padre y 35.84% la madre" es correcta.

De otra parte, escuchada la vista del 6 de octubre de 2023, surge sin duda alguna que la apelante no estipuló, en cuanto a los gastos médicos no cubiertos por el plan, que la proporción sería aplicada cuando el gasto fuese mayor de $50. En el récord quedó claramente establecido que dicha estipulación fue realizada al aprobarse la pensión provisional y la representación legal de la apelante manifestó que dicha estipulación se retiraba.[11] Incluso, esta manifestó a la Examinadora que "se va a la proporción que sea desde un (1) centavo."[12] A esos efectos, la Examinadora indica: "sí,

---

[9] Vista del 17 de mayo desde el 3:16:17 a 3:16:19.
[10] *Íd.*, 3:16:51 a 3:18:26.
[11] Vista del 6 de mayo desde 1:10:58 a 1:12:37.
[12] *Íd.*, 1:12:40 a 1:12:44.

sí, lo que sea gasto extraordinario no cubierto por el plan en la proporción correspondiente que nos dé."[13] A lo que las partes manifestaron, correcto.[14]

Como indicamos en el trámite procesal, surge *del Informe de Pensión Alimentaria Final* que la EPA recomendó que:[15]

> • La madre provee el plan médico. Cada padre atenderá en proporción [de] 64.16% el padre [y] 35.84% la madre todo gasto no cubierto por el plan que sea mayor de $50.00 (está determinado atender este gasto desde la Pensión Alimentaria Provisional, estipulándose cambio en la proporción).

Por ende, dicha recomendación no está conforme a la prueba, la misma debe decir:

> • La madre provee el plan médico. Cada padre atenderá en proporción de 64.16% el padre y 35.84% la madre de todo gasto no cubierto por el plan.

Igualmente es meritorio destacar que, erró la Examinadora al indicar en su *Informe sobre Reconsideración* que "[a]l no presentarse otra solicitud, se mantuvo según fue estipulado desde el 8 de noviembre de 2022."[16] Reiteramos que escuchada la grabación de la vista del 6 de octubre de 2023 surge claramente que lo estipulado en cuanto al gasto mayor de $50 se dejó sin efecto. Por ende, sí se presentó otra solicitud, a saber, que fuera todo gasto no cubierto por el plan médico.

Por último, la apelante argumentó sobre los gastos del volleyball que existen muchos que son "variables" por los cuales no se puede establecer una cuantía fija. Por otro lado, reconoce que para ello se estableció un pago recurrente de $283.75 como gasto suplementario. Como indicamos, en el *Informe de Pensión Alimentaria Final* la Examinadora consignó como una determinación de hechos estipulado que; "[l]a proporción entre las partes, según el

---

[13] *Íd.*, 1:12:45 a 1:12:51.
[14] *Íd.*, 1:12:52.
[15] Véase, Apéndice del Recurso a la pág. 539.
[16] *Íd.*, a la pág. 600.

ingreso neto combinado ... es de 64.16% el padre y 35.84% la madre." Por lo cual, surge que todo gasto extraordinario se pagará en atención a dicha proporción y a solicitud de parte. Por ende, los alegados gastos "variables" del volleyball deberán ser sometidos en su día por la parte apelante y el foro apelado determinará si estos pueden ser considerados gastos extraordinarios; o si por el contrario, ya están cubiertos por la cuantía asignada.

En conclusión, los errores primero y tercero se cometieron. En cuanto al segundo error no fue incurrido. Reiteramos que cualquier gasto que la apelante considere extraordinario y no cubierto por la pensión asignada, deberá ser reclamada, de así entenderlo, ante el foro apelado.

**IV.**

Por los fundamentos antes expresados, se modifica la *Resolución* apelada para que se incluya que el apelado adeuda la cantidad de $224.56 del campamento de verano pasado y $894.23 del campamento de Navidad. Además, en cuanto a los gastos extraordinarios no cubiertos por el plan médico, la recomendación debe leer que cada parte la atenderá en proporción de 64.16% el padre y 35.84% la madre, y se elimina que sea mayor de $50. Así modificada, se confirma.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones